EMERSON STATE BANK, Appellee, v. A. G. COLE et al., Appellants.

No. 44362.

June 21, 1938.

Rehearing Denied December 16, 1938.

Cook & Cook and Clifford Powell, for appellee.

Keenan, Clovis & Sar, for appellants.

Anderson, J.—This action was originally brought at law in the district court of Mills County, Iowa, in which judgment was asked upon a promissory note for approximately $7,000, against A. G. Cole and Eleazar Cole as defendants. The action was aided by an attachment which was levied upon the land now involved in this litigation. The defendants filed separate answers. Defendant, A. G. Cole, answered that he had been discharged in bankruptcy and that he was no longer liable upon the note in suit. His father and codefendant, Eleazar Cole, filed a separate answer in which he denied liability upon the note in suit and set out a contract which is known in the evidence as Exhibit No. 3, which was signed by himself and the then officers of the plaintiff bank, which contract is as follows:

"This agreement and stipulation entered into this 9th day of February, 1932, between the Emerson State Bank, Emerson, Iowa, and E. Cole of Emerson, Iowa, that whereas A. G. Cole is indebted to the said Emerson State Bank, Emerson, Iowa, in the amount of Seven Thousand Dollars and whereas the said E. Cole, father of A. G. Cole, wishes to secure said bank that said E. Cole signs a certain note for $7,000.00 with said A. G. Cole bearing six per cent interest and due in two years with the understanding that said E. Cole be not pushed for collection of said note, but that bank will carry said note until the death of said E. Cole, if need be, and then file against *share of A. G. Cole only in* his estate."

And that under the terms of the said contract the said E. Cole was not liable upon the said promissory note sued upon for the reason that the contract limited the liability to the share or interest of A. G. Cole only in his father's estate.

The above quoted contract was made and executed in duplicate, one copy being retained by the bank and one copy given to Eleazar or E. Cole. Soon after the execution of the foregoing contract one of the then officers of the bank went to the home of E. Cole and, at the request of Mr. Cole, inserted in the copy of the contract held by Mr. Cole the clause in the above contract which is in italics, but the copy of the contract retained by the bank was never changed. The officers of the bank were changed, and at the time this action was originally brought the then officers of the bank knew nothing about the change in the copy of the contract which was held by E. Cole.

The plaintiff then filed several amendments to its petition reciting the contents of its own copy of the stipulation or agreement, hereinabove mentioned, and further reciting that the defendant, E. Cole, was about to dispose and was disposing of his property with the attempt to defraud, and asking that a writ of attachment issue to protect the plaintiff's claim. Certain property, including the property here involved, was levied upon under a writ of attachment issued at the instance of the plaintiff. The defendant, E. Cole, departed this life in December 1936, prior to any final disposition of the questions involved in this case, and the plaintiff filed an amended and substituted petition making the executors of E. Cole's estate parties defendant and alleging the indebtedness due it upon the note referred to in its original petition, and that there was at that time due upon the said note approximately $10,000, and asked judgment for that amount. An answer was filed to the amended and substituted petition by the executors of the estate of Eleazar Cole setting up practically the same defenses as we have mentioned above. The plaintiff filed a reply to the answer of the defendants, reciting that at the time of the execution of the note in suit and the contracts, which we have mentioned, and also reciting that prior to the execution of the note in suit and the contracts, at the request of E. Cole and his son, A. G. Cole, and in consideration of the renewal of the indebtedness of the said A. G. Cole and upon the agreement of the bank to carry said indebtedness during the lifetime of E. Cole, and as security for

the payment of said indebtedness of A. G. Cole, the plaintiff bank and E. Cole and A. G. Cole entered into an oral agreement whereby and by the terms of which the said defendants, Cole, agreed that the then existing devise in the will of E. Cole, devising to A. G. Cole the property here involved would not be changed, and that the said E. Cole would by will devise to his said son the said real estate so that the collection of the note involved could be had out of said real estate which was pledged to the payment of said indebtedness. That in furtherance of said oral agreement the said E. Cole signed the note declared upon herein, and also the stipulation or contract heretofore mentioned, and thereby extended the time of payment of A. G. Cole's indebtedness until his father's death.

The defendants then filed what they designate as a "replication", which is in fact an answer to the affirmative matters and things alleged in the plaintiff's so-called "reply", and asks that plaintiff's petition and reply be dismissed.

The plaintiff then filed a motion to transfer the cause of action to equity, which was sustained, and the cause was transferred to equity and tried as an equitable action.

No motion was filed to strike plaintiff's reply, in which the equitable issue was tendered, and as we have indicated, the issues which were in fact tried in the lower court were as to the matters tendered in the plaintiff's so-called "reply" and the defendants' so-called "replication". The defendants now object for the first time in this court that the issues were not properly pleaded and that the matters and things tendered in plaintiff's so-called reply could not be set up in any reply. Of course, the better pleading, under the circumstances, would have been the filing of an amended and substituted petition by the plaintiff, and an *answer* by the defendants. However, as the parties, by their record, seem to have considered the pleadings sufficient to present the disputed issues, and the court having tried and determined those issues without any objection as to the form or names of the pleadings, we are not disposed to seriously consider the objection now raised, that the issues finally determined by the trial court were not properly presented to it by the pleadings in the case.

The record in the case clearly supports the claims of the plaintiff. At the time of the execution of the note declared upon, E. Cole, the father of A. G., was the owner of approximately

600 acres of unencumbered land and $30,000 or $40,000 in mortgages, bonds and other securities. He was about ninety years of age but in good health and mental vigor. At the time A. G. Cole was indebted to the plaintiff bank, in approximately $7,000, which was past due and he owned property sufficient to pay the indebtedness. The bank had been attempting to obtain either payment or security, and it was disclosed at the meeting in the bank at the time of the execution of the note and contracts, heretofore mentioned, that the father, E. Cole, had devised to his son, A. G., the particular quarter section of land involved in this controversy, and it was agreed, apparently, between the parties that the share of A. G. Cole in his father's estate, including the 160 acres of land devised to A. G. in his father's will, should stand as security and be pledged for the payment of the note, and under such agreement the plaintiff bank, would extend the payment of the indebtedness of A. G. Cole. In fact A. G. Cole himself testified plainly that in consideration of the extension of time of payment of his indebtedness that he pledged to the bank his share of his father's estate, and that E. Cole, the father, told the officers of the bank, at the time of the oral contract, that he was giving his son A. G. the particular quarter section of land here involved.

A. G. Cole took advantage of the bankruptcy act and on April 12, 1935, was discharged in bankruptcy from liability on his listed indebtedness.

In 1936, the father, E. Cole, transferred to his relatives practically all of his property, including the quarter section, which was deeded to A. G. It was after the transfer and disposition of his property by E. Cole that the plaintiff bank commenced this action upon the note in suit and caused the said quarter section of land, and some other land, to be attached.

The matters and questions involved were fully submitted to the trial court which found and determined that the equities were with the plaintiff bank, and that it was entitled to the relief demanded. The defendants appeal.

The trial court specifically found that the oral contract alleged by the plaintiff bank was entered into and under its terms it was agreed that in consideration of the extension of the time of payment of the indebtedness of A. G .Cole to the plaintiff bank, that A. G.'s share in the estate of his father was to stand as security and be pledged for the payment of his in-

debtedness; and that it was especially agreed that the said indebtedness was to be paid out of A. G.'s share in his father's estate; and that the bank should not press A. G. for the payment during the lifetime of his father. The trial court further found that the oral contract was based on a valuable consideration and that it was performed in part by the renewal and extension of A. G.'s indebtedness, and that it did not come within the statute of frauds as claimed by the defendants; that the quarter section of land which A. G. was to receive from his father under the then existing will was specifically pledged and an equitable lien created thereon in favor of the plaintiff bank, which lien attached to the said real estate at the time of the making of the oral contract. The trial court further found that the discharge of A. G. Cole in bankruptcy did not affect the equitable lien theretofore created on the described real estate, and that such lien survived the discharge in bankruptcy. And the trial court further found that the facts as found by it ''were proven by clear and convincing testimony, and that the equities of this case are preponderantly in favor of the plaintiff, and that the equities require that the plaintiff should prevail.''

The appellants contend that by proceeding against the land in question by attachment the plaintiff waived any equitable lien that it may have had on the real estate. We can not sustain such contention. At the time the original action was brought, as we have indicated, the officers then in charge of the plaintiff bank knew nothing about the variance in the copies of the agreement, heretofore mentioned, one of which was held by the plaintiff bank, and the other by E. Cole, and they knew little or nothing as to the oral contract which was made at the time of the extension of A. G.'s indebtedness to the bank. They did know that A. G. had taken advantage of the bankruptcy act, and they did know that his father, E. Cole, was disposing of his entire estate to his heirs. They proceeded, as they had a right to do, to protect the interests of the bank and attached the property, some of which had been conveyed to A. G. after his discharge in bankruptcy. After the commencement of the action, as pleadings in court were filed, it developed that the contract held by the father, E. Cole, provided that the indebtedness of A. G. Cole to the bank should be collected *only* from the share of A. G. Cole in his father's estate. Upon such discovery or disclosure the bank then asserted its equitable rights under the oral con-

tract, and this oral contract was established by clear and unequivocal testimony. A Mr. Cheney, who was then the officer of the bank who had the matter in charge, testified that at the time of the making of the agreements A. G. said, "his father was leaving him a quarter section where he lived and he was willing to pledge that as security to the note." And the father said, "he was giving Arthur (A. G.) this quarter section of land and that Arthur's land was to be pledged to the payment of his indebtedness." A. G. testified that his share of the estate was to stand as security for the payment of his note. And in answer to the question:

"Q. Then it was agreed between you and the Bank on the day this contract was signed that whatever your share in your father's estate was was to stand as security to be pledged for the payment of this note. Is not that right? A. Yes, that day when I signed the note, yes. And my father agreed to it.

"Q. When you men left the Bank that day you had made a contract with the Bank that whatever your share in that estate of your father's was when he died, if the Bank would not press you on the payment of this note that you would pay them and they would be paid out of your share of the estate. That was the arrangement was it not? A. Yes.

"Q. When you agreed that your share should stand pledged for the payment of this note and your father agreed that it should stand pledged then the Bank agreed to extend your note for a period of two years and did so? A. Yes."

The appellants contend that the appellee bank was guilty of laches such as to bar its right to assert the equitable issue presented in this case by reason of the fact, as they assert, that plaintiff withheld the issue relative to the oral contract until after the death of Eleazar Cole and thus deprived the defendants of his testimony on the subject. We cannot see anything material to the disposition of the case in this contention. As we have indicated, the oral contract was fully and completely proven, and it is shown that the plaintiff bank did not know of the existence of the oral contract until at the time it was pleaded and presented as an issue and after the bank had discovered its existence either by or through investigation or conversation with its former officers or with the defendant, A. G. Cole.

The record shows, without controversy, that the plain-

tiff bank agreed with E. Cole that it would carry his son's indebtedness until the death of E. Cole, and that in consideration of such promise E. Cole agreed that the then existing devise in his will to A. G. would not be changed. The indebtedness was carried from 1933 to 1936, and no attempt at collection was made. Then E. Cole changed his will and at the same time transferred all of his property, without consideration, with the apparent fraudulent intent of placing it beyond the reach of the appellee bank. The appellants claim that there was a breach of the oral contract on the part of the bank in bringing the action as it did, and that by reason of such breach the bank is not now entitled to assert its rights under said contract. Of course, the statement of this contention is its own answer in the face of this record.

It is our conclusion that the finding and decree of the trial court is amply supported by the record and results in substantial equity. An affirmance must follow.—Affirmed.

STIGER, C. J., and DONEGAN, HAMILTON, KINTZINGER, and MITCHELL, JJ., concur.

MILLER, J., takes no part.

RICHARDS, J., dissents.